IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-01048-PAB-KAS

FALLON CHAVEZ-BRAVO,

      Plaintiff,

v.

BRIGHTON SCHOOL DISTRICT 27J,

      Defendant.

_____

**ORDER**
_____

      The matter before the Court is defendant's Partial Motion to Dismiss Complaint Under F.R.C.P. 12(b)(6) [Docket No. 24].  Plaintiff Fallon Chavez-Bravo filed a response, Docket No. 34, and defendant replied.  Docket No. 35.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND[1]**

      Ms. Chavez-Bravo is eighteen years old and has been diagnosed with significant learning disorders and autism spectrum disorder ("ASD").  Docket No. 19 at 3, ¶ 9.  One or both disorders cause "impairment in reading: word reading accuracy, reading fluency, reading comprehension (severe), specific learning disorder with impairment in written expression: spelling, grammar and punctuation accuracy, clarity or written expression

---

[1] The following facts are taken from the First Amended Complaint and Jury Demand, Docket No. 19, and are presumed true for the purpose of ruling on the partial motion to dismiss.

(severe), and specific learning disorder with impairment in math: math reasoning, accurate and fluent math calculations (severe)." *Id.* at 8, ¶ 36.

Ms. Chavez-Bravo was first evaluated for an independent education program ("IEP") when she was seven years old. *Id.* at 3, ¶ 12. Based on her first IEP, it was clear that Ms. Chavez-Bravo struggled with literacy and mathematics. *Id.*, ¶ 13. In 2016, when Ms. Chavez-Bravo was in the sixth grade, she was reevaluated. *Id.*, ¶ 14. At that time, Ms. Chavez-Bravo was reading at a third-grade level and tested in the twenty-fifth percentile for third grade mathematics. *Id.*

Ms. Chavez-Bravo began attending schools in Brighton School District 27J ("BSD") in 2016. *Id.*, ¶ 10. Ms. Chavez-Bravo has been on an IEP throughout her enrollment in BSD. *Id*, ¶ 12. While Ms. Chavez-Bravo was a student in BSD, a comprehensive evaluation was completed every three years and an IEP meeting was held every year. *Id.* at 13, ¶ 71. At each IEP meeting, Ms. Chavez-Bravo's mother, one of Ms. Chavez-Bravo's general education teachers, one of Ms. Chavez-Bravo's special education teachers, and a representative of the school district "who was knowledgeable about the general education curriculum and the availability of resources of the public agency" were present. *Id.* The IEP team, including the school district's representative, had the ability, authority, and responsibility to ensure that Ms. Chavez-Bravo received accommodations, support, and instruction, including through her IEP, that would allow her to access BSD's education programs to the same extent as her non-disabled peers. *Id.*

BSD failed to provide Ms. Chavez-Bravo adequate support, accommodations, and instruction to allow her access to the district's education program. *Id.* at 3–4, ¶ 15.

In particular, BSD failed to adequately ensure that directions and assignments were read to Ms. Chavez-Bravo. *Id.* Although Ms. Chavez-Bravo received passing grades, she struggled to complete tasks and understand directions. *Id.* at 4, ¶ 16. Ms. Chavez-Bravo was given reduced assignments and needed the assignments to be "chunked into small pieces." *Id.* Ms. Chavez-Bravo's middle school teachers reported that she was having behavioral issues. *Id.* at 5, ¶ 20. However, Ms. Chavez-Bravo's 2016 IEP evaluation did not mention the behavior issues reported by her teachers. *Id.* Her teachers described Ms. Chavez-Bravo as lazy and would insist that she could complete her work, but did not put in the effort to do so. *Id.*, ¶ 19.

For the spring of 2018, Rena Bravo, Ms. Chavez-Bravo's mother, transitioned Ms. Chavez-Bravo to home-based education to ensure that Ms. Chavez-Bravo was receiving the education that she was not receiving at BSD. *Id.* at 4, ¶ 17. Ms. Bravo took leave from work to educate her daughter. *Id.* During the period of Ms. Chavez-Bravo's home-based education, Ms. Bravo read directions and assignments to her daughter, which was an accommodation included in Ms. Chavez-Bravo's IEP. *Id.*, ¶ 18.

In 2019, when Ms. Chavez-Bravo was in the ninth grade, she was reevaluated. *Id.* at 5, ¶ 22. Across multiple tests, Ms. Chavez-Bravo scored as high risk, below average, or below grade level. *Id.*

At that time, Ms. Chavez-Bravo continued to struggle in class. *Id.* Ms. Chavez-Bravo could not start or complete assignments without a person or text-to-speech device reading assignments out loud to her. *Id.* BSD failed to ensure that Ms. Chavez-Bravo had access to a text-to-speech device or a qualified special education professional or paraprofessional to read assignments to her. *Id.*, ¶ 23. The person

3

Case No. 1:24-cv-01048-PAB-KAS    Document 43    filed 03/14/25    USDC Colorado
pg 4 of 28

reading Ms. Chavez-Bravo's assignments to her was often a peer.  *Id.*, ¶ 22.  Ms. Chavez-Bravo's IEP did not contain a specific provision for BSD to provide a text-to-speech device until March of 2023, two months before Ms. Chavez-Bravo's graduation, despite clear documentation that Ms. Chavez-Bravo needed this accommodation to participate in class.  *Id.* at 6–7, ¶¶ 28, 29.

Ms. Chavez-Bravo's IEP included provisions that she receive between 60 and 120 minutes of specialized education support each week.  *Id.* at 6, ¶ 26.  In the last two years of high school, BSD increased the amount of direct support Ms. Chavez-Bravo was supposed to receive.  *Id.*  In light of how far behind Ms. Chavez-Bravo was in her education, her IEP did not provide adequate specialized instruction.  *Id.*  Ms. Chavez-Bravo often did not receive the specialized instruction provided for in her IEP.  *Id.*  Ms. Chavez-Bravo's high school teachers continued to claim that Ms. Chavez-Bravo's academic struggles were based on a lack of effort.  *Id.* at 11, ¶ 53.  Ms. Chavez-Bravo's teachers did not make the accommodations required by her IEP.  *Id.*

During Ms. Chavez-Bravo's junior year, Ms. Chavez-Bravo took the SAT and received a 340 in evidence-based reading and writing and a 420 in mathematics.  *Id.* at 8, ¶ 37.  Both scores are considered as "did not meet graduation demonstration."  *Id.*

Throughout her education, Ms. Chavez-Bravo received A and B grades.  *Id.* at 6, 8, 10, ¶¶ 25, 39, 50.  These grades were inconsistent with Ms. Chavez-Bravo's scores on standardized and diagnostic tests and did not reflect Ms. Chavez-Bravo's abilities.  *Id.* at 6, 9–10, ¶¶ 25, 40, 50.

Ms. Chavez-Bravo played on her high school basketball team.  *Id.* at 11, ¶ 54.  Although Ms. Chavez-Bravo made the varsity team her senior year, she played very

little.  *Id.*  Ms. Chavez-Bravo's coach would not let her play.  *Id.*  He claimed that Ms. Chavez-Bravo could not remember the plays.  *Id.*  However, Ms. Chavez-Bravo's coach would not read her IEP and would not break down the plays for Ms. Chavez-Bravo in a way that was consistent with her IEP.  *Id.*  Ms. Chavez-Bravo's coach told her that he only makes accommodations for "retarded kids."  *Id.*

In October 2022, Ms. Chavez-Bravo underwent an independent education evaluation and was diagnosed with ASD.  *Id.* at 12, ¶ 62.  BSD did not provide Ms. Chavez-Bravo services for her ASD because BSD did not correctly evaluate Ms. Chavez-Bravo for the condition.  *Id.*  Without services for ASD, Ms. Chavez-Bravo struggled to connect and engage with her peers.  *Id.* at 13, ¶ 64.

Ms. Bravo noticed that Ms. Chavez-Bravo was receiving significant support from her peers, but not special education teachers, general education teachers, or qualified paraprofessionals.  *Id.* at 6, ¶ 27.  Ms. Bravo had concerns about her daughter's education and contacted BSD and Ms. Chavez-Bravo's IEP team on multiple occasions.  *Id.* at 11, ¶ 52.  Ms. Bravo asked the district to provide written documentation of how Ms. Chavez-Bravo's school was meeting Ms. Chavez-Bravo's IEP.  *Id.*  Ms. Bravo did not receive the documentation she requested.  *Id.*

Ms. Chavez-Bravo graduated from high school in May 2023.  *Id.* at 10, ¶ 50.  Although Ms. Chavez-Bravo stated in her junior year that she hoped to attend a four-year university and then attend veterinary school, she faces the barrier of being "functionally illiterate."  *Id.* at 9, ¶¶ 42–43.

Ms. Chavez-Bravo filed this action on April 18, 2024.  Docket No. 1.  On July 16, 2024, Ms. Chavez-Bravo filed an amended complaint.  Docket No. 19.  In her amended

complaint, Ms. Chavez-Bravo brings three claims against BSD, namely, one claim of

violating § 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794; one claim of

violating the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et

seq.*; and one claim of violating the Colorado Anti-Discrimination Act ("CADA"), Colo.

Rev. Stat. §§ 24-34-801 *et seq*.  *Id.* at 15–13, ¶¶ 75–95.  Ms. Chavez-Bravo seeks

"special damages including for out-of-pocket expenses, lost educational opportunities,

and lost future wages" as well as "general damages for emotional distress."  *Id.* at 18,

¶¶ 1–2.  On July 30, 2024, BSD filed a partial motion to dismiss Ms. Chavez-Bravo's

claims.  Docket No. 24.  On August 20, 2024, Ms. Chavez-Bravo responded.  Docket

No. 34.  BSD replied on September 3, 2024.  Docket No. 35.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a complaint must allege enough factual matter that, taken as true, makes

the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671

F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the

facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken

Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534

F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the

statement need only 'give the defendant fair notice of what the claim is and the grounds

upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting

*Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to

accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th

Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [her] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III. ANALYSIS

"Title II of the ADA states, 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (quoting 42 U.S.C. § 12132. To state a claim under the ADA, a plaintiff must plausibly allege: "(1) that he or she is a qualified individual with a disability; (2) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of

7

the plaintiff's disability." *Id.* (quoting *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999)).

"Section 504 of the Rehabilitation Act states: 'No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" *Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008) (quoting 29 U.S.C. § 794(a)). To state a claim under § 504, a plaintiff must plausibly allege "(1) plaintiff is handicapped under the Act; (2) [s]he is 'otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff." *Id.* (citing *Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1151 (10th Cir. 1999)). "When evaluating a discrimination claim under both § 504 and Title II of the ADA, 'because these provisions involve the same substantive standards, courts analyze them together.'" *Dorsey v. Pueblo Sch. Dist. 60*, 140 F. Supp. 3d 1102, 1116 (D. Colo. 2015) (alterations omitted) (quoting *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009)).

Under CADA, an "individual with a disability . . . must not, by reason of the individual's disability, be excluded from participation in or be denied the benefits of services, programs, or activities provided by a place of public accommodation, . . . a public entity . . . or a state agency, . . . or be subjected to discrimination by any such place of public accommodation, public entity, or state agency." Colo. Rev. Stat. § 24-34-802(1)(b). "A court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal 'Americans with Disabilities

8

Act of 1990', 42 U.S.C. sec. 12101 et seq., and its related amendments and implementing regulations." *Id.*, § 24-34-802(4); *see also Stalder v. Colorado Mesa Univ.*, 551 P.3d 679, 683 (Colo. App. 2024) ("CADA is 'substantially equivalent' to the ADA and, whenever possible, CADA should be interpreted consistently with the ADA." (quoting *Tesmer v. Colo. High Sch. Activities Ass'n*, 140 P.3d 249, 253 (Colo. App. 2006)).

BSD does not seek to dismiss Ms. Chavez-Bravo's entire complaint. *See* Docket No. 24. Instead, BSD argues that (1) Ms. Chavez-Bravo cannot recover damages for emotional distress, (2) she cannot recover for injuries outside the statute of limitations period, and (3) she has failed to plausibly allege § 504, ADA, or CADA claims based on her middle school education or her participation in her high school basketball team. *Id.* at 3–13. In her response, Ms. Chavez-Bravo states that, "[a]fter further review of the relevant authorities, Plaintiff agrees not to seek emotional distress damages on any of her claims for relief." Docket No. 34 at 2 n.1, 11 n.3 ("As noted above, Plaintiff concedes that she will not be seeking emotional distress damages on any of her claims for relief."). Therefore, the Court will grant that portion of BSD's partial motion to dismiss seeking to dismiss Ms. Chavez Bravo's request for damages for emotional distress. The Court will next consider whether the statute of limitations bars any portion of Ms. Chavez Bravo's claims.

### A. Statute of Limitations

BSD argues that Ms. Chavez-Bravo cannot recover for injuries she sustained before April 18, 2022 because these injuries fall outside the applicable statute of limitations for her claims. Docket No. 24 at 3. "The statute of limitations is an affirmative defense that must be raised by the defendant." *Herrera v. City of Espanola*,

32 F.4th 980, 991 (10th Cir. 2022) (citing *Fernandez v. Clean House, LLC*, 883 F.3d

1296, 1299 (10th Cir. 2018)).  "Typically, facts must be developed to support dismissing

a case based on the statute of limitations."  *Id.* (citation omitted).  However, a "statute of

limitations defense may be appropriately resolved on a Rule 12(b) motion when the

dates given in the complaint make clear that the right sued upon has been

extinguished."  *Id.* (quoting *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671

(10th Cir. 2016)).

"Neither the ADA nor § 504 have their own statute of limitations."  *A.T. by &*

*through L.T. v. Dry Creek Joint Elementary Sch. Dist.*, 2017 WL 2654854, at *3 (E.D.

Cal. June 20, 2017); *Hamer v. City of Trinidad*, 924 F.3d 1093, 1098 (10th Cir. 2019)

("neither Title II nor section 504 explicitly provided for a statute of limitations").  "Where

Congress creates a cause of action without specifying the time period within which it

may be brought, courts may infer that Congress intended the most analogous state

statute of limitations to apply."  *Hamer*, 924 F.3d at 1098 (quoting *E.E.O.C. v. W.H.*

*Braum, Inc.*, 347 F.3d 1192, 1197 (10th Cir. 2003)).  Here the parties agree that

Colorado's general two-year statute of limitations applies to Ms. Chavez-Bravo's ADA

and § 504 claims, as well as to her CADA claim.  Docket No. 24 at 3 (citing Colo. Rev.

Stat. § 13-80-102); Docket No. 34 at 3, 8; s*ee also Sanders v. Corecivic, LLC*, No. 22-

cv-00072-RMR-NRN, 2023 WL 11956530, at *3 (D. Colo. Oct. 25, 2023), *report and*

*recommendation adopted*, 2023 WL 11956528 (D. Colo. Nov. 20, 2023) (Colorado's

general "two-year limitation applies to ADA Title II and Rehabilitation Act claims" (citing

*Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1235 (D. Colo. 2009) (ADA);

*Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 630 (10th Cir. 1993)

(Rehabilitation Act)); *Hamer*, 924 F.3d at 1098 (assuming Colorado's general two-year statute of limitations applies to ADA and § 504 claims)).[2]  However, the parties dispute whether Colorado's minority tolling statute applies to Ms. Chavez-Bravo's claims.  *See* Docket No. 24 at 4; Docket No. 34 at 3.

_____

[2] The Court notes that, since the Tenth Circuit's opinion in *Baker*, 991 F.2d at 630, several federal courts have found that certain ADA and § 504 claims based on disability discrimination by a school should be governed by the two-year statute of limitations in the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et. seq*.  *See D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012); *Piazza v. Fla. Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 689 (S.D.N.Y. 2011); *Dizio v. Manchester Essex Reg'l Sch. Dist.*, 2022 WL 974050, at *3–4 (D. Mass. Mar. 31, 2022). The Tenth Circuit has described the IDEA, the ADA, and § 504 as a "trio" of federal statutes protecting disabled students.  *A.P., IV by Porco v. Lewis Palmer Sch. Dist. No. 38*, 728 F. App'x 835, 838 (10th Cir. 2018) (unpublished) ("The IDEA guarantees children with disabilities a 'free appropriate public education,' or FAPE, mainly through implementation of 'individualized education programs,' or IEPs.  At the same time, Title II of the ADA forbids public entities from discriminating against persons with disabilities. And rounding out the trio, the Rehabilitation Act requires public schools (among other entities) to reasonably accommodate students with disabilities." (internal citations omitted)).  The references in Ms. Chavez-Bravo's complaint to BSD's alleged failure to provide her the accommodations in her IEP appear to be alleged violations of the IDEA. *See*, *e.g.*, Docket No. 19 at 11, ¶ 52.  However, Ms. Chavez-Bravo waited to file her claims until after she graduated, and she cannot seek relief under the IDEA because it applies only to current students.  *Bradley v. Jefferson Cnty. Pub. Sch.*, 88 F.4th 1190, 1193 (6th Cir. 2023) (the IDEA "applies to students only until they graduate from a secondary school or exceed the age of twenty-one, whichever comes first" (citing 20 U.S.C. § 1412(a)(1)(A)).  The courts that have held that the IDEA's statute of limitations applies to a student's ADA and § 504 claims have reasoned that the IDEA is "a more sharply focused federal analogue."  *Dizio*, 2022 WL 974050, at *2 (quoting *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 736 (3d Cir. 2009) ("It does not make sense that the virtually identical claims made under these . . . statutes would be treated differently from a statute-of-limitations perspective").  These courts have also found that "applying minority tolling provisions would be fundamentally inconsistent with the IDEA'[s] goal of prompt presentation and resolution of educational disputes."  *Keitt v. New York City*, 882 F. Supp. 2d 412, 439 n.15 (S.D.N.Y. 2011).  However, because the parties assume that Colorado's two-year general statute of limitations applies, the Court will not consider the issue.

Under Colorado law, generally, "civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, must be commenced within two years after the cause of action accrues, and not thereafter."  Colo. Rev. Stat. § 13-80-102(1). "However, when a plaintiff is unable to sue because they are a minor (or under some other legal disability), the statute of limitations may be extended."  *Kinslow v. Mohammadi*, 546 P.3d 130, 132 (Colo. 2024) (citing Colo. Rev. Stat. § 13-81-103). Under § 13-81-103, "a minor's statute of limitations will not begin to run until they reach the age of majority."[3]  *Id.*  When "a federal statute is deemed to borrow a State's limitations period, the State's tolling rules are ordinarily borrowed as well."  *Arbogast v. Kansas by & through Dep't of Lab.*, 752 F. App'x 582, 584–85 (10th Cir. 2018) (unpublished) (quoting *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 116 (2013)).

BSD argues that federal courts will not apply state tolling provisions of statutes of limitation "if doing so 'would defeat the goals of the federal statute at issue.'"  Docket No. 24 at 4 (quoting *Hardin v. Straub*, 490 U.S. 536, 539 (1989); citing *Bd. of Regents v.*

---

[3] The Court notes that, "when a minor turns eighteen before the regular statute of limitations has run, 'such person shall be allowed to take action within the period fixed by the applicable statute of limitations or within two years after the removal of the disability, whichever period expires later.'"  *Kinslow*, 546 P.3d at 134 (quoting Colo. Rev. Stat. § 13-81-103(1)(c)).  BSD argues that, because Ms. Chavez-Bravo filed her complaint on April 18, 2024, any claim that accrued before April 18, 2022 is barred by the statute of limitations.  Docket No. 24 at 3.  The allegations in the complaint do not identify when Ms. Chavez-Bravo turned eighteen, although she claims that she was seven years old in 2011.  Docket No. 19 at 3, ¶ 12.  As such, Ms. Chavez-Bravo was eighteen years old for some period of time in 2022.  If Ms. Chavez-Bravo turned eighteen before April 18, 2022, her claims based on injuries before this date would be barred regardless of minority tolling because she would have waited over two years to bring her claims.  However, this is a fact issue not before the Court on BSD's motion to dismiss.

*Tomanio*, 446 U.S. 478, 485 (1980) (federal courts borrow limitations and tolling rules
unless doing so "would be inconsistent with the federal policy underlying the cause of
action under consideration"); *see also A.T.*, 2017 WL 2654854, at *4 ("When a federal
court borrows the applicable statute of limitations from state law, it borrows 'also the
rules for its tolling, unless to do so would be inconsistent with the federal policy
underlying the cause of action under consideration.'" (quoting *Alexopulos ex rel.
Alexopulos v. San Francisco Unified Sch. Dist.,* 817 F.2d 551, 554 (9th Cir. 1987)
(internal quotation omitted))).  BSD argues that the purpose of the ADA and § 504 is to
"ensure that students, despite a disability, have equal access to educational services
and programs."  Docket No. 24 at 4 (citing *Kimble v. Douglas Cnty. Sch. Dist. RE-1*, 925
F. Supp. 2d 1176, 1185 (D. Colo. 2013) ("Defendant retains a continuing obligation
under Section 504 and the ADA to protect B.K. from discrimination while she remains a
qualifying student with a disability, and therefore must continue to offer any
accommodations or services required to ensure that B.K. is provided an opportunity for
a FAPE under Section 504.")).  BSD claims that many federal courts have found that
state minority tolling provisions are inconsistent with the underlying purposes of the
ADA and § 504 when students sue their school for its failure to accommodate their
disabilities and provide them with an appropriate education.  *Id.* at 5 (citing *Mullin v. Las
Lomitas Elementary Dist.*, 2004 WL 2848021, at *5 (N.D. Cal. Apr. 13, 2004); *A.T.*, 2017
WL 2654854, at *1–2; *Vinluan v. Ardsley Union Free Sch. Dist.*, 2021 WL 1063482, at
*7–8 (S.D.N.Y. Mar. 18, 2021)); *see also L.K. v. Sewanhaka Cent. High Sch. Dist.*, 2015

WL 12964663, at *12 (E.D.N.Y. July 16, 2015), *aff'd*, 641 F. App'x 56 (2d Cir. 2016)

(unpublished); *Dizio*, 2022 WL 974050, at *4.[4]

In *Mullin*, 2004 WL 2848021, at *1, the plaintiff brought claims against his school

district for its refusal "to provide him with reasonable accommodations for his alleged

disability." The court provided three reasons for why minority tolling would be

inconsistent with the policies underlying the plaintiff's ADA and § 504 claims. *Id.* at *5.

"First, as with the IDEA, parents and guardians of disabled children have standing, in

their own right, to seek relief under the Rehabilitation Act and the ADA against school

districts, as well as on behalf of their children." *Id.* Second, "[a]llowing a disabled

student to wait for years to challenge the decisions of a school district would run

contrary to federal policy encouraging 'prompt resolution' of claims concerning the

provision of free public education to disabled children." *Id.*; *see also L.K.*, 2015 WL

---

[4] BSD also cites cases holding that the IDEA's two-year statute of limitations
applies to ADA and § 504 claims to support the proposition that minority tolling does not
apply to these claims. Docket No. 24 at 6 (citing *P.P.*, 585 F.3d at 735–36). Courts
have found that minority tolling does not apply under the IDEA because it "would conflict
with the congressional requirement of early submission of claims and its goal of prompt
resolution" and that therefore the "the limitations period can be extended only for one of
the enumerated statutory exceptions." *Baker v. S. York Area Sch. Dist.*, 2009 WL
4793954, at *5 (M.D. Pa. Dec. 8, 2009). While these cases support the conclusion that
minority tolling does not apply to ADA and § 504 claims, the reasoning of these cases is
different because they apply a different statute of limitations. *See Esposito v. Ridgefield
Park Bd. of Educ.*, 856 F. App'x 367, 370 n.9 (3d Cir. 2021) (unpublished) ("We have
held that 'virtually identical claims' brought under the IDEA and Section 504 of the
Rehabilitation Act are subject to the same time limitations. Applying this consideration
to K.M.'s ADA claim, which hinges on his IDEA claim, warrants application of the IDEA's
limitations rules." (citation omitted)). Therefore, the Court finds BSD's cases applying
the IDEA's statute of limitations to ADA and § 504 claims to be distinguishable.

12964663, at *12 ("The goal of federal statutes such as the IDEA, ADA and
Rehabilitation Act is to provide students with the services they require as promptly as
possible in order to avoid impairing their educational progress.  Consequently, . . .
applying a minority tolling provision in this setting would frustrate the goals of the ADA
and Section 504." (citation omitted)); *Vinluan*, 2021 WL 1063482, at *8 ("The Court finds
that application of minority tolling to claims brought under the IDEA, ADA, and Section
504 would frustrate federal policy" because "'[t]he statutory scheme created by the
IDEA, which seeks to channel such claims through administrative proceedings that
allow state and local educational officials to address problems, has as its goal the
prompt presentation and resolution of disputes, thus allowing the student to get the
services he or she needs as quickly as possible.'" (quoting *Piazza*, 777 F. Supp. 2d at
691)).  "Third, in that a parent may invoke the substantive and procedural rights
available under the IDEA when a child is as young as three years, *see* 20 U.S.C.
§ 1412(a)(1)(A), a school district in California, where the age of majority is eighteen,
'could be held hostage for some potential damages claims based on the Rehabilitation
Act or the ADA for as long as fifteen years.'"  *Mullin*, 2004 WL 2848021, at *5
(alterations omitted) (quoting *Nieves–Marquez v. Puerto Rico*, 353 F.3d 108, 119 n.8
(1st Cir. 2003)).

Ms. Chavez-Bravo responds that BSD's argument is premised on cases which
find that the IDEA's statute of limitations applies to the plaintiff's ADA and § 504 claims,
and that BSD's arguments are therefore inapplicable to this case.  Docket No. 34 at 3–
4.  The Court disagrees.  Although the cases discussed above reference the IDEA,
these cases specifically address whether state tolling provisions apply to the plaintiffs'

ADA and § 504 claims, not whether the IDEA statute of limitations applies to these

claims.  *See Mullin*, 2004 WL 2848021, at *5; *A.T.*, 2017 WL 2654854, at *3–4; *Vinluan*,

2021 WL 1063482, at *7–8); *L.K.*, 2015 WL 12964663, at *12; *c.f. Dizio*, 2022 WL

974050, at *4 (finding that the IDEA statute of limitations applies to ADA and § 504

claims but also considering whether Massachusetts's minority tolling provision applied).

For example, while the *Mullin* court discussed the IDEA, the plaintiff was over the age of

eighteen and, as in this case, did not bring an IDEA claim.  *Mullin*, 2004 WL 2848021, at

*1, *5.

Ms. Chavez-Bravo also appears to argue that minority tolling is not inconsistent

with the policies underlying her ADA and § 504 claims because these statutes provide

for compensatory damages, which is not a remedy available under the IDEA.[5]  *See*

Docket No. 34 at 5; *see also Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 147 (2023)

---

[5] In her response, Ms. Chavez-Bravo discusses *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601 (3d Cir. 2015).  *See* Docket No. 34 at 4–6.  In *G.L.*, the court held that "a disabled child is entitled to compensatory education for a period equal to the period of deprivation."  *G.L.*, 802 F.3d at 626.  "Compensatory education aims to place disabled children in the same position they would have occupied but for the school district's violations of IDEA, by providing the educational services children should have received in the first instance."  *Id.* at 608 (quotations, citation, and alternations omitted). Ms. Chavez-Bravo appears to argue that, because the Third Circuit has held that the IDEA's two-year statute of limitations does not limit a student's ability to seek compensatory education under the IDEA, *id.* at 626, Ms. Chavez-Bravo can seek compensatory damages under the ADA and § 504 for the same "period of deprivation," which the complaint alleges to be from 2016 to 2022.  *See* Docket No. 34 at 4–6.  *G.L.* is irrelevant to this case.  First, Ms. Chavez-Bravo does not seek compensatory education as a remedy.  *See* Docket No. 19 at 18.  Second, the *G.L.* court never discussed the ADA or the Rehabilitation Act because the plaintiff did not bring claims under these acts.  *G.L.*, 802 F.3d at 604.  Third, as discussed above, the Third Circuit has held that claims against a school under the ADA and § 504 for the school's failure to comply with the IDEA are governed by the IDEA's statute of limitations, *D.K.*, 696 F.3d at 244, whereas the parties agree that Colorado's general statute of limitations governs Ms. Chavez-Bravo's claims.  Docket No. 24 at 3; Docket No. 34 at 3, 8.

("None of this, Mr. Perez contends, forecloses his current claim because his ADA complaint seeks only compensatory damages, a remedy everyone before us agrees IDEA cannot supply."). Some courts have agreed with Ms. Chavez-Bravo that minority tolling is not always inconsistent with the policies underlying the ADA and the Rehabilitation Act. *See F.B. by & through Bono v. Francis Howell Sch. Dist.*, 2024 WL 2208217, at *3–4 (E.D. Mo. May 16, 2024); *Duncan v. Eugene Sch. Dist. 4J*, 431 F. Supp. 3d 1193, 1203 (D. Or. 2020) ("While this Court previously found that state minority statutes are inconsistent with the federal IDEA's objective, they are consistent with the objectives of the federal ADA and Rehabilitation Act." (citation, quotation, and alterations omitted); *McIntyre v. Eugene Sch. Dist. 4J*, 2018 WL 7254251, at *5 (D. Or. Sept. 12, 2018), *report and recommendation adopted*, 2019 WL 294758 (D. Or. Jan. 23, 2019), *rev'd in part, vacated in part*, 976 F.3d 902 (9th Cir. 2020) ("we remand for further consideration whether McIntyre's claims are subject to minority tolling"); *but see A.T.*, 2017 WL 2654854, at *4 ("Plaintiff attempts to distinguish these two cases based on the fact that the § 504 and ADA claims here seek compensatory relief, not prompt provision of educational services. This argument is unavailing; *Alexopulos* made no such distinction between past and future harms. Indeed, the plaintiffs' claims in *Alexopulos* were all seeking compensation for past harms." (citation and alterations omitted)).

In *F.B.*, plaintiff, a minor student with autism, was "physically restrained" and his school "secluded him in an isolation room even though such practices were forbidden by his Individualized Education Plan." *F.B.*, 2024 WL 2208217, at *1. The plaintiff brought claims under the ADA and § 504, as well as constitutional claims under the

Fourth and Fourteenth Amendments. *Id.* The school district argued that the student's
ADA and § 504 claims were not subject to minority tolling. *Id.* at *4. The court
disagreed. *Id.* The court acknowledged cases holding that identical claims under the
IDEA, the ADA, and § 504 should not be subject to minority tolling because it would
frustrate the statutes' shared goal of promoting "expeditious resolution of educational
programming disputes." *Id.* (quoting *Vinluan*, 2021 WL 1063482, at *8). However, the
court found that "[n]one of those cases are relevant because Plaintiff seeks only
compensatory damages, rather than a compensatory education under the IDEA, and
therefore is not at risk of losing 'day after day of education opportunity' if his claims are
tolled by the statute." *Id.* The court stated that, "[b]ecause the IDEA and its related
policy goals are inapplicable here, and Defendant does not otherwise explain how the
minority tolling statute undermines the goals of the ADA and the Rehabilitation Act, the
Court must apply the minority tolling statute to Plaintiff's claims." *Id.*

The Supreme Court in *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 170 (2017),
similarly distinguished between § 504 and ADA claims premised on a school's failure to
provide an appropriate education and § 504 and ADA claims based on other
discriminatory conduct. In *Fry*, the plaintiff brought ADA and § 504 claims based on her
school's refusal to allow her to bring her service animal to school. *Id.* at 161–64. The
Court noted that "Title II of the ADA and § 504 of the Rehabilitation Act cover people
with disabilities of all ages, and do so both inside and outside schools." *Id.* at 170. The
Court explained that, while the goal of the IDEA is "to provide each child with
meaningful access to education by offering individualized instruction and related
services appropriate to her unique needs," the ADA and § 504 "aim to root out disability-

based discrimination, enabling each covered person (sometimes by means of

reasonable accommodations) to participate equally to all others in public facilities and

federally funded programs." *Id.* (internal citation and quotation omitted). The "same

conduct might violate all three statutes," but "the statutory differences just discussed

mean that a complaint brought under Title II and § 504 might instead seek relief for

simple discrimination, irrespective of the IDEA's FAPE obligation." *Id.* at 171. In

distinguishing between the two types of cases, the Court stated that

> One clue to whether the gravamen of a complaint against a school concerns the
> denial of a FAPE, or instead addresses disability-based discrimination, can come
> from asking a pair of hypothetical questions. First, could the plaintiff have
> brought essentially the same claim if the alleged conduct had occurred at a
> public facility that was *not* a school—say, a public theater or library? And
> second, could an *adult* at the school—say, an employee or visitor—have pressed
> essentially the same grievance? When the answer to those questions is yes, a
> complaint that does not expressly allege the denial of a FAPE is also unlikely to
> be truly about that subject; after all, in those other situations there is no FAPE
> obligation and yet the same basic suit could go forward. But when the answer is
> no, then the complaint probably does concern a FAPE, even if it does not
> explicitly say so; for the FAPE requirement is all that explains why only a child in
> the school setting (not an adult in that setting or a child in some other) has a
> viable claim.

*Id.*

The Court finds the *Fry* analysis instructive in this case. The allegations in Ms.

Chavez-Bravo's complaint demonstrate that she is seeking relief based on two types of

alleged failures of the school. First, Ms. Chavez-Bravo's claims are premised on the

allegation that BSD failed to provide accommodations in her IEP that were necessary

for her to have access to her school's education program. *See, e.g.*, Docket No. 19 at

6, ¶ 28 ("The IEP itself was underserving Fallon. It did not contain a specific provision

for the school to provide Fallon with a text-to-speech device despite clear

documentation that she needed it to be able to participate in class."). Second, Ms.

19

Chavez-Bravo claims that she did not receive the accommodations provided for in her
IEP.  *See*, *e.g.*, *id.* at 4, 11, ¶¶ 18, 54 (plaintiff "was receiving, from her mother, the
accommodations that 27J was supposed to be providing per Fallon's IEP" and plaintiff's
basketball coach "would not break [plays] down for her in a way that was consistent with
her IEP").  As such, (1) Ms. Chavez-Bravo could not bring her claims against a public
entity other than her school district and (2) a visitor or employee of the school could not
have brought Ms. Chavez-Bravo's claims.  *Fry*, 580 U.S. at 170.  Thus, the
circumstances of this case are distinguishable from the circumstances in *F.B.*, where
the student's claims based on his physical restraint and isolation "might instead seek
relief for simple discrimination, irrespective of the IDEA's FAPE obligation."  *Id.* at 171;
*F.B.*, 2024 WL 2208217, at *1.

Accordingly, the Court agrees with the weight of authority that "applying a
minority tolling provision in this setting would frustrate the goals of the ADA and Section
504."[6]  *Dizio*, 2022 WL 974050, at *4 (quoting *L.K.*, 2015 WL 12964663, at *12).  When
"Congress outlined its purposes and goals in enacting the ADA and [the Rehabilitation
Act], it expressly noted that it sought full participation, inclusion, and integration in
society for individuals with disabilities."  *Hamer*, 924 F.3d at 1109.  Meaningful
participation in primary and secondary education is part of the society-wide inclusion

_____

[6] Although *Tomanio*, 446 U.S. at 485, requires the Court to consider only whether
Colorado's minority tolling provision would be "inconsistent with the federal policy
underlying the cause of action under consideration," the Court notes that allowing
minority tolling would also undermine the federal policy underlying the IDEA, given that
the "statutory scheme created by the IDEA, which seeks to channel such claims through
administrative proceedings that allow state and local educational officials to address
problems, has as its goal the prompt presentation and resolution of disputes, thus
allowing the student to get the services he or she needs as quickly as possible."
*Piazza*, 777 F. Supp. 2d at 691.

envisioned by Congress. In Colorado, the age of majority is eighteen. *See Kinslow*,
546 P.3d at 132. In almost every case, a Colorado student who waits to sue until
reaching the age of majority will have completed primary education and will be on the
verge of completing secondary education, at which point the school district has little
ability to address gaps in a student's education. Waiting to bring ADA and § 504 claims
based on a school's failure to accommodate a disabled student's needs until the student
has turned eighteen effectively forecloses the student's ability to participate in the public
education system and may also foreclose a student's ability to participate in other parts
of society. Neither statute requires this result. Instead, "parents and guardians of
disabled children have standing, in their own right, to seek relief under § 504 and the
ADA against school districts, as well as on behalf of their children." *A.T.*, 2017 WL
2654854, at *4 (citation and alteration omitted). Therefore, the Court finds that
Colorado's minority tolling statute did not toll Ms. Chavez-Bravo's claims against BSD.[7]

BSD argues that Ms. Chavez-Bravo's CADA claim is also barred by the statute of
limitations because "CADA claims are subject to the 'same standards and defenses'
available under the ADA and its regulations." Docket No. 24 at 9 (citing Colo. Rev. Stat.
§ 24-34-802). Ms. Chavez-Bravo responds that nothing in BSD's arguments regarding
the ADA and § 504 "would prevent Colorado from applying its own statute of limitations

---

[7] The Tenth Circuit has held that a public entity commits a "'new violation' each
day that it fails to remedy a non-compliant service, program, or activity" under the ADA
and § 504. *Hamer*, 924 F.3d at 1105 (the "affirmative, ongoing duty that Title II and
section 504 place upon it mandates as much"). However, as noted above, because the
allegations in the complaint do not include Ms. Chavez-Bravo's birthday, the Court
cannot determine the exact day before which Ms. Chavez-Bravo's claims are barred by
the statute of limitations.

to claims arising under state law." Docket No. 34 at 8. She asserts that even "if the Colorado law's substantive components are analyzed with the same standards as the federal Section 504 and ADA . . . CADA says nothing about applying the same procedural rules of Section 504 and the ADA." *Id.* (citation omitted).

CADA states that a "court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal 'Americans with Disabilities Act of 1990', 42 U.S.C. sec. 12101 et seq., and its related amendments and implementing regulations." Colo. Rev. Stat. § 24-34-802(4). Colorado courts have not considered what specific "standards and defenses" are "available" under the ADA. Instead, Colorado courts have stated that "CADA is 'substantially equivalent' to the ADA and, whenever possible, CADA should be interpreted consistently with the ADA." *Stalder*, 551 P.3d at 683. The language of the statute states that the Court "shall apply the same standards and defenses that are available under the federal 'Americans with Disabilities Act." Colo. Rev. Stat. § 24-34-802(4). Nothing in the language of the statute suggests the Court can choose which defenses apply to ADA claims, but not to CADA claims, or apply substantive but not procedural defenses. Moreover, the statute makes no distinctions between procedural and substantive defenses. For example, before "filing a federal suit under the ADA, a plaintiff must first exhaust his administrative remedies." *Thiessen v. Stewart-Haas Racing, LLC*, 311 F. Supp. 3d 739, 743 (M.D.N.C. 2018). Nothing in the statute suggests that CADA does not incorporate this procedural defense. Moreover, even if CADA did not include procedural defenses, "[s]tatute of limitations are neither substantive nor procedural per se but have mixed substantive and procedural aspects." *Lujan v. Regents of Univ. of California*, 69 F.3d

1511, 1516 (10th Cir. 1995) (internal quotation and citation omitted).  Ms. Chavez-Bravo

has not shown that the statute of limitations applicable under the ADA is not a

substantive defense incorporated by CADA.

Courts have held that state minority tolling statutes are inapplicable to ADA

claims in cases where the plaintiff's claim is premised on a school's failure to comply

with the IDEA because minority tolling is inconsistent with the policies underlying the

ADA.  *See*, *e.g.*, *Mullin*, 2004 WL 2848021, at *5.  The Colorado Court of Appeals has

stated that a court should not "interpret a statute in ways that defeat the legislature's

obvious intent," *Park Forest Care Ctr., Inc. v. City of Westminster*, 2020 WL 1492177, at

*2 (Colo. App. Mar. 26, 2020), and that "CADA should be interpreted consistently with

the ADA."  *Stalder*, 551 P.3d at 683.  For the reasons discussed above, the Court finds

that minority tolling of the statute of limitations is equally inconsistent with the purposes

of CADA and the ADA.

Moreover, the Colorado "General Assembly has prescribed . . . rules for deciding

which of two irreconcilable statutes governs."  *Jenkins v. Panama Canal Ry. Co.*, 208

P.3d 238, 241 (Colo. 2009).  The first rule is that "the specific provision prevails over the

general provision."  *Id.* (citing Colo. Rev. Stat. § 2–4–205).  Although Colorado law

provides that a minor's statute of limitations is tolled in most cases, Colo. Rev. Stat.

§ 13-81-103, the specific provisions of CADA state that courts "shall apply the same

standards and defenses that are available under the federal 'Americans with Disabilities

Act."  Colo. Rev. Stat. § 24-34-802(4).  As such, to the extent there is a conflict between

the Court's conclusion that the ADA does not permit minority tolling in this case and

Colorado's general minority tolling statute, CADA's direction to apply the standards and

defenses of the ADA governs.  Therefore, because (1) courts have found minority tolling

does not apply to certain ADA claims, (2) CADA should be interpreted consistently with

the ADA, and (3) minority tolling is inconsistent with the purposes underlying CADA, the

Court finds that CADA incorporates the ADA's defense that minority tolling is

inapplicable in this case.  The Court finds that Colorado's minority tolling provision does

not apply to Ms. Chavez-Bravo's CADA claim and that Colorado's general two-year

statute of limitations bars that portion of Ms. Chavez-Bravo's claims that are based on

acts before the limitations period.

 Ms. Chavez-Bravo argues that, even if minority tolling does not apply, her claims

are timely because she brought them within two years of discovering her injury.  Docket

No. 34 at 6–7; *see also Hamer*, 924 F.3d at 1098 (the statute of limitations on plaintiff's

ADA and § 504 claims "begins to run when the plaintiff knows or has reason to know of

the existence and cause of the injury which is the basis of his action").  Ms. Chavez-

Bravo argues that, because her school continued to give her A and B grades, she was

unable to discover her injuries sooner.  Docket No. 34 at 6–7.  The amended complaint

alleges that "Fallon and her mother did not know the extent to which she was being

discriminated against because the school told them she was passing her classes,

because she was nominally being provided special education support and because the

District refused to provide Ms. Bravo with the information she needed to fully

understand how her daughter was being treated."  Docket No. 19 at 12, ¶ 60.

 However, other allegations in the amended complaint make Ms. Chavez-Bravo's

assertion that she or her mother were unaware of her injuries implausible.  As to Ms.

Bravo, the amended complaint alleges that Ms. Chavez-Bravo underwent a

comprehensive evaluation every three years, and that Ms. Bravo met with her
daughter's IEP team every year to discuss Ms. Chavez-Bravo's educational needs. *Id.*
at 13–14, ¶ 71. It alleges that Ms. Bravo noticed Ms. Chavez-Bravo "was receiving
significant support not from a special education teacher, or even a general education
teacher or qualified paraprofessional. She was receiving support from her peers in
class." *Id.* at 6, ¶ 27. It further alleges that Ms. Bravo "did have concerns and she
reached out to the District and Fallon's IEP team directly on multiple occasions. She
requested that the District provide written documentation of how the school was meeting
Fallon's IEP, but she did not receive any documentation in response." *Id.* at 11, ¶ 52.
Finally, the amended complaint alleges Ms. Bravo took a leave from work in 2018
specifically to provide Ms. Chavez-Bravo the accommodations BSD was not providing
her. *Id.* at 4, ¶ 17 ("She purchased books and took a leave from her work to ensure that
her daughter was receiving the education that she was not receiving in 27J."). It is
implausible that Ms. Bravo was unaware of Ms. Chavez-Bravo's injuries while also
taking time off work to redress these injuries.

As to Ms. Chavez Bravo, the amended complaint alleges that she attended
classes where she did not receive the accommodations provided for in her IEP and that
she received assistance from peers rather than her educators. *Id.* at 6, ¶ 27.
Furthermore, the amended complaint alleges that, in the spring of 2018, she did receive
the services she needed from her mother, but returned to school, where she did not
receive the same services. *Id.* at 4, ¶ 17. Finally, the complaint alleges that Ms.
Chavez-Bravo was evaluated in the third, sixth, and ninth grades, and each evaluation
indicated that she was performing below grade level. *Id.* at 3, 5, ¶¶ 12, 14, 22.

Moreover, in her junior year, Ms. Chavez-Bravo took the SAT and received scores demonstrating that she "did not meet graduation demonstration." *Id.* at 8, ¶ 37. The Court finds that it is implausible, given Ms. Chavez-Bravo's semester of home-based education, her assistance from her peers rather than teachers, and her consistently low test scores, that she was unaware of her injuries until April 2022, one month before her graduation. *Id.* at 10, ¶ 50. Therefore, the Court rejects Ms. Chavez-Bravo's assertion that the statute of limitations did not begin to run until she discovered her injuries in her final year of high school.

### B. Allegations Regarding Middle School and High School Basketball

BSD argues that, regardless of the statute of limitations, Ms. Chavez-Bravo's complaint fails to plausibly allege her ADA and § 504 claims based on her middle school education or her participation in her high school basketball team. Docket No. 24 at 11–13. It maintains that the allegations in the complaint do not demonstrate that a school district official, as opposed to her middle school teacher or high school basketball coach, was deliberately indifferent to Ms. Chavez-Bravo's educational needs. *Id.*

The Court has found that minority tolling does not apply to Ms. Chavez-Bravo's claims, and that Colorado's general two-year statute of limitations limits her ability to recover for injuries outside the limitations period. As the Court has noted, because the allegations in the complaint do not include Ms. Chavez-Bravo's birthday, the Court cannot identify the exact date on which the limitations period began to run. However, the complaint alleges that Ms. Chavez-Bravo was in the sixth grade in 2016, Docket No. 19 at 3, ¶ 14, and was in the ninth grade in 2019. *Id.* at 5, ¶ 22. Because Ms. Chavez-Bravo filed her complaint on April 18, 2024, Docket No. 1, injuries she sustained before 2019 are outside the limitations period. Therefore, the Court will not consider whether

26

Ms. Chavez-Bravo has stated her ADA and § 504 claims against BSD based on her middle school education.

BSD argues that Ms. Chavez-Bravo "does not allege—nor could she—that her basketball coach or her wrestling coach were District officials with authority to take corrective action on the District's behalf." Docket No. 24 at 12 (citations omitted). It claims that Ms. Chavez-Bravo does not allege that she or her mother reported her coach's failure to provide instruction consistent with her IEP to a BSD official. *Id.* at 12–13. BSD argues that "there is no plausible claim that Plaintiff was discriminated against as part of her athletics program in high school" and that the allegations regarding her experience on the basketball team "should therefore be dismissed pursuant to Rule 12(b)(6)." *Id.* at 13.

Ms. Chavez-Bravo responds that "the allegations regarding Plaintiff's participation in athletics are not to be read as the basis for a standalone claim for relief, but rather as evidence of the District's intentional and reckless violations of Section 504, the ADA, and CADA in failing to provide Plaintiff accommodations and denying her equal access to its programs." Docket No. 34 at 10 (citation omitted). She argues that the "District does not explain why it believes that these allegations form a separate and standalone basis for relief that could be subject to a motion to dismiss" and that the "District does not argue that they should be stricken." *Id.*

The Court agrees that BSD does not explain why Ms. Chavez-Bravo's allegations regarding her experience on her high school basketball team constitutes a separate claim from her other allegations. *See* Docket No. 19 at 1–2, ¶ 2 (claiming that "Defendant discriminated against her by failing to provide necessary services and

accommodations for her specific learning disorders and her autism spectrum disorder"

and that "Defendant discriminated against her by failing to provide Fallon with access to

social events and extra-curricular [activities] because of her disabilities").  For example,

BSD makes no argument that these allegations do not support her ADA or § 504 claims

or that they are better understood as raising a separate claim under a different statute,

such as sex discrimination under Title IX, 20 U.S.C. § 1681(a).  Moreover, BSD

provides no support for the proposition that, on a motion to dismiss, the Court can

dismiss specific factual allegations in Ms. Chavez-Bravo's complaint, rather than

dismissing her claims.  Therefore, the Court will deny that portion of BSD's motion

seeking to dismiss Ms. Chavez-Bravo's allegations regarding her participation in her

high school basketball team.

## IV.    CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Partial Motion to Dismiss Complaint Under F.R.C.P.

12(b)(6) [Docket No. 24] is **GRANTED in part** and **DENIED in part**.

DATED March 14, 2025.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge